**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Sameena El-Khashab, as parent and natural guardian of M.E., a minor, individually and behalf of all others similarly situated, | Civil Action No.: |
| *Plaintiff* | |
| v. | Jury Trial Demanded |
| The Glen Mills School & Randy Irseon, Executive Director of Glen Mills School | |
| *Defendants*. | |

**CLASS ACTION COMPLAINT**

**I.       INTRODUCTION**

1.       This case is about the multi-system failure of those charged with protecting and rehabilitating wayward youth. On April 8, 2019, the Pennsylvania Department of Human Services revoked the Glen Mills Reform School ("Glen Mills") licenses following "documented instances of abuse against former students" and basic failure to abide by "the Human Services Code and DHS regulations" including engaging in "gross incompetence, negligence, and misconduct in operating the facility and mistreatment and abuse of children in Glen Mills' care."

2. Beyond violating society's basic trust to safeguard its youth, Glen Mills' and its Executive Director, Randy Ireson's, actions violated each resident's Constitutional right to body integrity, including safeguards against unjustified intrusions into personal security. Glen Mills and Ireson further violated Constitutional guarantees by failing to establish policies and practices to protect the Plaintiff and the proposed putative Class defined below from known harms and known patterns of harms and civil rights deprivations.

1

3. Glen Mills and Ireson were aware of the danger each resident child was being placed in. The resulting harm to each resident child was foreseeable and direct and was willfully disregarded by Glen Mills and Ireson. It was solely through Glen Mills' and Ireson's authority that created the opportunity that otherwise would not have existed for these injurious to occur.

4. Glen Mills has since appealed the Department of Human Services order revoking its licenses. As a result, Glen Mills stands to be reinstated as a reform school. As such, injunctive and equitable relief is appropriate and necessary to ensure the school does not engage in any similar conduct in the future.

5. Plaintiff brings this action on behalf of herself as a parent and natural guardian of M.E. and all others similarly situated to redress the violations of his Constitutional rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments. Plaintiff seeks an award of all available damages, including attorneys' fees and costs. Plaintiff also seeks all necessary injunctive and declaratory relief to prohibit any similar future conduct.

## II.    **PARTIES**

### A.    **PLAINTIFF**

6. Sameena El Khashbab is the parent and natural guardian of M.E. a minor. The Khashab family currently resides in Bala Cynwyd, Montgomery County, Pennsylvania.

7. Prior to April 2017, M.E. was adjudicated delinquent in the Montgomery County Juvenile Court. The court committed M.E. to the custody of Glen Mills pursuant to a contract between Montgomery County and Glen Mills.

### B.    **DEFENDANTS**

8. Defendant, The Glen Mills School ("Glen Mills"), is a Pennsylvania not-for-profit corporation with its principal place of business at 185 Glen Mills Road, Glen Mills, Pennsylvania 19342.

2

9. Defendant, Randy Ireson ("Ireson"), is an adult individual residing at 33 Threewood Drive #3, Glen Mills, Pennsylvania 19342. Ireson was the Executive Director of Glen Mills. Ireson was responsible for all aspects of the management and supervision of Glen Mills' day-to-day operations, including developing and/or implementing policies and procedures to prevent the abuse of juveniles in Glen Mills' care, and hiring, training and/or retaining Glen Mills' leadership and staff.

10. Ireson took a leave of absence from Glen Mills on March 1, 2019, only days after an investigation into the school became public. Ireson continues to be compensated by Glen Mills and continues to live in school affiliated housing.

## III.    JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that: (a) the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs; (b) this is a class action involving 100 or more class members; and (c) at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

12. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a), (b) and/or (c); many of the acts and transactions giving rise to the violations of law complained of herein occurred in this district and Defendants conduct substantial business in this district.

## IV.    FACTUAL BACKGROUND

### A.    HISTORY OF THE GLEN MILLS SCHOOL

13.    Glen Mills was a state licensed residential school, pursuant to 55 Pa. Code. § 3800.11, which purported to provide "24-hour care, rehabilitation, and education to more than

600 students who attend [Glen Mills] under court order."[1] Glen Mills was also registered as a facility that provides "educational services as part of a total rehabilitative package" which is required for court placement of a child.

14. Pennsylvania law mandates that facilities used for the commitment of delinquent children are "operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare." 42 Pa. C.S.A. § 6352 (a)(3).

15. Glen Mills purports to provide evidence-based programs such as "Positive Behavioral Intervention Supports, Moral Reconation and Coping with Anger" to turn its students away from crime.[2] Glen Mills' website purports that the school employs a "Balanced and Restorative Justice (BARJ) compliant, residential program utilizing a Sociological Model, designed to effectuate long-term behavioral change and enhance life skills development."[3]

16.    The program includes "room and board, clothing, behavior management, individual and group counseling, academic and vocational programming, medical and dental services, as well as athletic and recreational opportunities."[4]

17. Glen Mills has received thousands of placements and commitments of juveniles from this Commonwealth and other states by virtue of its promise of a progressive and effective program for delinquent children, with proven services.[5]

---

[1]    *Glenn Mills Schools v. Court of Common Pleas of Philadelphia Cnty.*, 513 Pa. 310 (1987).

[2]    http://www.glenmillsschool.org/admissions/regulatory-compliance/

[3]    http://www.glenmillsschool.org/admissions/programs-offered/

[4]    http://www.glenmillsschool.org/admissions/programs-offered/

[5]    https://www.philiv.com/crime/a/glen-mills-schools-pa-abuse-juvenile-investigation-20190220.html

4

18. The School is funded in large part by the Commonwealth and other government jurisdictions to provide services mandated by state law for children who have been adjudicated as delinquent in juvenile court. "Glen Mills receives taxpayer money, including a tuition of $52,000 per year for each boy from Philadelphia...[with] annual revenues of around $40 million."[6]

## B.    THE CULTURE OF ABUSE AT GLEN MILLS

19. Despite Glen Mills' manufactured image, Glen Mills' leadership, led by Ireson, created and maintained a culture of fear and abuse, and ignored the medical and educational needs of its residents. The juveniles placed at Glen Mills suffered systematic physical and/or emotional abuse at the hands of Glen Mills' leadership and staff.

20.    The severe physical and/or emotional abuse suffered by these juveniles was perpetuated by Glen Mills' failure to properly train, retain, supervise and/or discipline its staff. As a result, Glen Mills' staff engaged in the severe physical and emotional abuse of juveniles as a matter of practice and custom, knowing that their conduct would not be subject to discipline by Glen Mills' and/or Ireson.

21.    The juveniles placed at Glen Mills also suffered severe physical and emotional abuse at the hands of fellow residents at the school. Glen Mills' staff routinely encouraged and forced Glen Mills' juveniles to fight each other. To trigger a student assault, Glenn Mills' staff would tell students that they hoped that a particular student would not "slip in the shower."

22.    In December 2018, the Children's Rights and the Education Law Center-PA published a report titled *Unsafe and Uneducated: Indifference to Dangers in Pennsylvania's Residential Child Welfare Facilities*.

---

[6]       https://www.philia.com/crime/a/glen-mills-schools-pa-abuse-juvenile-investigation-20190220.html

23.     The report revealed that Glen Mills "not only has a large number of incidents of staff physical maltreatment," but has refused access to PA-DHS staff and state police. A PA-DHS's violation report noted that staff was "belligerent" and "aggressive" with PA-DHS staff and state police who were investigating allegations of child abuse.[7]

24.     The report also documented repeated instances of physical abuse to juveniles by Glen Mills' staff from March 2014 to January 2017, including the use of severe physical violence.

25.     In March 2019, the Philadelphia Inquirer reported that at least nine boys told the chief of the juvenile unit at the Defender Association of Philadelphia that "Glen Mills staffers encouraged Philadelphia students to sign [] pre-typed letters by falsely claiming their sentences would restart if they left Glen Mills for another program."[8]

26. Glen Mills has known for many years of its culture of violence and abuse. Glen Mills touted that "it maintains its own informal security force" and relies only on "local volunteer fire companies and the state police for fire and police protection, respectively."[9]

27.     As early as 2001, the Utah Division of Youth Corrections engaged the Criminal and Juvenile Justice Consortium of the Graduate School of Social Work at the University of Utah to evaluate out-of-state placements for juvenile offenders. The evaluation culminated in the publishing of a comprehensive report in 2002 (the "Utah Report").[10]

---

[7]     https://www.childrensrights.org/press-release/unsafe-and-uneducated-new-report-reveals-dangers-for-youth-in-pennsylvania-foster-care/

[8]     https://www.philly.com/news/glen-mills-schools-pa-abuse-letter-philadelphia-pittsburgh-remove-students-investigation-20190302.html

[9]     *In re Incorporation of the Borough of Glen Mills*, 1988 WL 183879, at *2.

[10] https://justice.utah.gov/Documents/Research/Juvenile/Out%20of%20State%20Placements.pdf

28.     The Utah Report evaluated six out-of-state facilities where the Utah Division of Youth Corrections sent juvenile offenders.

29.     The Utah Report documented physical abuse at Glen Mills under the guise of discipline.

30.     Students also reported lying about the abuse and systematic attempt by Glen Mills' leadership and staff to hide the abuse, going so far as intercepting letters and students getting "beat down" for reporting the abuse.

31.     The Utah juveniles were often too afraid to report the abuse because they feared retaliation. Of the seventeen Utah juveniles who reported abuse at any placement facility, fifteen attended Glen Mills.

32.     Glen Mills refused to provide taped interviews of staff and, unlike all the other out-of-state schools, Glen Mills refused to give evaluators access to case files.

33.     Further, in 2018, the Philadelphia Department of Human Services ("DHS") accepted a 'corrective action plan' from Glen Mills after its staff attacked a juvenile. DHS identified the same set of abusive conduct that has been reported in the media. In response, Glen Mills informed DHS that it would make "significant changes to campus operations."[11]

34.     On April 8, 2019, the Pennsylvania Department of Human Services revoked the Glen Mills Reform School ("Glen Mills") licenses following "documented instances of abuse against former students" and basic failure to abide by "the Human Services Code and DHS regulations" including engaging in "gross incompetence, negligence, and misconduct in operating the facility and mistreatment and abuse of children in Glen Mills' care."

---

[11]     https://www.philly.com/news/glen-mills-schools-pa-abuse-letter-philadelphia-pittsburghremove-students-investigation-20190302.html

### C.    PLAINTIFF M.E.'S EXPERIENCE AT GLEN MILLS

35.    Prior to the events described below, M.E. had at all times maintained good behavior towards staff and never posed a physical threat to other students.

36.    When M.E. was admitted to Glen Mills, he was assigned to live in Tyler-5 Hall. Within two weeks of moving into Tyler-5 Hall, M.E. was violently assaulted by three unknown staff members.

37.    During the assault, two staff members took turns pinning M.E. down, while the third staff member repeatedly punched M.E. in the face, torso, and stomach. During this brutal attack and all others, M.E. did not resist nor did he defend himself because he was aware doing so would result in a more severe beating. The attack left M.E. with bruises and swelling in his face and lower body.

38.    In June 2017, M.E. was assaulted by three staff members in the communal bathroom. Staff members pinned him to the floor and relentlessly punched him in his face, head, and upper body. This attack left M.E. with severe bruising, swelling, and bleeding from his mouth and face.

39.    In July 2017, M.E. was assaulted by staff members identified as Chris and Dirk in his bedroom. Chris and Dirk were upset that M.E. did not make his bed using the method taught by Glen Mills, and violently attacked M.E. as punishment. One of the two staff members threw M.E. to the ground, and both punched and kicked M.E. repeatedly.

40.    Over the course of M.E.'s five months at Glen Mills, he estimates that he was assaulted by staff approximately 15-20 times.

41.    While at Glen Mills, M.E. was repeatedly punished by being forced to sit in an uncomfortable position on the ground for over fourteen hours at a time. The sitting punishment

was known as "the Townhouse." M.E. reports being forced to perform "the Townhouse" over twenty times over the course of five months.

42.    In September 2017, M.E. was instructed by a staff member to perform a task. Performing the task made M.E. several minutes late to report back to his hall. As punishment for being late, a staff member locked M.E. in an office for over four hours. M.E. was not allowed to use a restroom while he was locked in the office.

43.    As a result of being routinely and systematically assaulted by the Glenn Mills staff, M.E. suffered severe physical and orthopedic injuries which required medical attention. Staff members instructed M.E. to tell medical personnel that his injuries were the result of football practice or fights with other students. Staff members threatened to increase the frequency and severity of assaults for students who sought to report their behavior.

## V.    CLASS ACTION ALLEGATIONS

44. This action is brought by the Named Plaintiff as a class action pursuant to Federal Rule of Civil Procedure 23 *et seq*., on behalf of herself as the parent and natural guardian M.E. and the following class:

> ALL PARENTS AND/OR NATURAL GUARDIANS OF MINOR PERSONS AND/OR ADULT PERSONS WHO ATTENDED THE GLEN MILLS SCHOOL. EXCLUDED FROM THE CLASS ARE SCHOOL EMPLOYEES AND/OR CONTRACTORS

45. The Class is believed to include thousands of persons.

46. The proposed members of the class are so numerous that the individual joinder of each would be impracticable. The exact number of class members is unknown at this time but can be ascertained readily from Glen Mills' records.

47. This matter presents common questions of law and fact arising out of the Defendants' conduct that predominate over individual questions for purposes with Rule 23(a)(2) and (b)(3). Among the numerous common, predominating common questions of law and fact are:

    a.  Whether the conditions at The Glen Mills School were cruel or inhumane in violation of the Eighth and Fourteenth Amendments;

    b.  Whether Defendants were deliberately indifferent to the conditions at the Glenn Mills School;

    c.  Whether the Glen Mills and Ireson were aware of the danger each resident child was being placed in;

    d.  Whether the resulting harm to each resident child was foreseeable;

    e.  Whether Glen Mills and Ireson willfully disregarded the conditions at the school; and

    f.  Whether Glen Mill's authority created the opportunity for harm that otherwise would not have existed.

48. The Named Plaintiff's claims herein are typical of the claims of the Class they seek to represent. Named Plaintiff and all members of the Class had their Constitutional rights violated by the conduct and indifference by The Glen Mills School and Ireson.

49. There are no unusual legal or factual issues which would cause management problems not normally and routinely handled in class actions.

50. The Named Plaintiff will fairly and adequately protect the interests of the class members. Named Plaintiff has retained experienced counsel in class action litigation and counsel has no adverse interest and is qualified to serve as class counsel. Named Plaintiff understands the nature of the claims, has no disqualifying factors, and will vigorously represent the interest of the class. Named Plaintiff, by agreement with Plaintiffs' counsel, has the resources available to them to prosecute the case fully and completely.

10

## VI.  CLAIMS FOR RELIEF

## COUNT I –VIOLATION OF 42 U.S.C. § 1983 (VIOLATIONS OF FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS)
### (On Behalf of the Class)

51. Plaintiff incorporates by reference all prior allegations.

52. Defendants have collectively established a policy, custom or practice to establish and maintain a culture of fear and abuse and ignored the medical and educational needs of its residents by subjecting its custodial guests to systematic physical and/or emotional abuse at the hands of Glen Mills' leadership and staff.

53. The Fourth, Eighth and Fourteenth Amendments provide citizens the right to be secure in their persons and prohibit Glen Mills and its leadership and staff from imposing cruel and unusual punishment on Plaintiff and the Class, including the policymaking at Glen Mills that created the culture of fear and abuse described herein.

54. As a direct and proximate result of Defendants' policy, custom or practice, Plaintiff and members of the Classes were deprived their right to be secure, free from physical abuse and unreasonable or excessive force, and caused Plaintiff and Class members grave physical, emotional, psychological and other harm.

55. In addition to damages, injunctive relieve is also necessary to ensure Defendants' unlawful conduct continue should Glen Mills obtain reinstatement of its license.

## COUNT II- NEGLIGENCE
### (On Behalf of the Class)

56. Plaintiff incorporates by reference all prior allegations.

57. Glen Mills owned, operated and controlled the Glen Mills School, its leadership and staff.

11

58. Glen Mills had a duty to establish and enforce policies and procedures to prevent juveniles under Glen Mills' care, custody and/or control from being abused, physically and/or psychologically, by its staff and/or by other residents at Glen Mills.

59. Ireson, as Executive Director of Glen Mills, was responsible for all aspects of the management and supervision of Glen Mills' day-to-day operations.

60. Ireson had a duty to create, implement, and/or enforce policies and procedures to prevent employees from physically abusing juveniles under Glen Mills' care.

61. Glen Mills and Ireson, by and through their employees, servants, and actual, apparent, and/or ostensible agents breached their duties and were careless, negligent, grossly negligent, reckless and/or outrageous, both generally and in the following specific respects:

    a.  Failing to establish sufficient policies and procedures to prevent physical and psychological abuse of Glen Mills' residents by Glenn Mills' staff;

    b.  Exposing Plaintiff and countless other children to unreasonable danger by failing to enforce whatever policies and procedures were in place;

    c.  Failing to report instances of child abuse to the appropriate authorities;

    d.  Failing to hire competent staff;

    e.  Failing to properly train and/or supervise the staff at Glen Mills;

    f.  Failing to detect a rampant and open culture of abuse of juveniles in Glen Mills' care;

    g.  Failing to stop a rampant and open culture of abuse of juveniles in Glen Mills' care;

    h.  Exposing Glen Mills' residents to widespread and systematic abuse over the course of decades;

    i.  Improperly handling past allegations of abuse;

    j.  Threatening Glen Mills' residents with physical harm in an attempt to prevent them from reporting abuse;

k.  Failing to provide meaningful oversight of staff;

l.  Refusing to allow parents of Glen Mills' residents reasonable access to their children;

m.  Preventing Glenn Mills' residents from seeking appropriate medical attention for the injuries incurred by Glen Mills' staff;

n.  Preventing Glen Mills' residents from honestly disclosing the causes of their injuries to medical personnel;

o.  Violating state standards for juvenile correctional facilities;

p.  Failing to adopt, enact, employ and/or enforce proper and adequate safety procedures, programs and rules;

q.  Failing to properly supervise Glen Mills' leadership and staff;

r.  Violating the civil rights of children;

s.  Failing to terminate employees who consistently abused children; and

t.  Failing to terminate employees who consistently allowed staff to abuse children.

62. By conducting itself as described above, Glen Mills' and Ireson's acts and/or omissions were a substantial factor, a factual cause and/or increased the risk of harm of Plaintiff and the Class severe physical and emotional injuries.

**WHEREFORE**, Plaintiff respectfully requests that the Court,

a.    Certify the Class as defined above pursuant to Rule 23(a) and (b)(3);

b.    Name Saltz, Mongeluzzi, Barrett & Bendesky, P.C. counsel for the class and name Sameena El-Khashab, as parent and natural guardian of M.E., as the class representative;

c.    Enter judgment in favor of Plaintiff and the Class pursuant to 42 U.S.C. § 1983 concluding that the Defendants have violated Plaintiff and the Class's constitutional rights;

d.    Award Plaintiff and the Class all available damages, including punitive damages;

e.    Grant Plaintiff and the Class all necessary equitable and injunctive relief to prohibit Glenn Mills from engaging in similar conduct; and

f.    Award Plaintiffs the reasonable costs and expenses incurred in the prosecution of this action including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.


Dated: May 13, 2019              BY:    */s/ Robert J. Mongeluzzi*
                                        Robert J. Mongeluzzi
                                        Larry Bendesky
                                        Adam J. Pantano
                                        Patrick Howard
                                        Daniel Ceisler
                                        **SALTZ MONGELUZZI BARRETT**
                                        **& BENDESKY, P.C.**
                                        One Liberty Place, 52nd Floor
                                        1650 Market Street
                                        Philadelphia, Pennsylvania 19103
                                        Tel: (215) 496-8282
                                        Fax: (215) 496-0999

                                        *Attorneys for Plaintiff and the Putative Class*